Louis Myers v. Commissioner.
Myers v. Commissioner
Docket No. 53087.
United States Tax Court
T.C. Memo 1956-47; 1956 Tax Ct. Memo LEXIS 246; 15 T.C.M. (CCH) 207; T.C.M. (RIA) 56047; February 29, 1956
*246 B. Jay Knight, Esq., for the petitioner. George T. Donoghue, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $8,392.97 in income tax for the year 1946. The only error in the Commissioner's determination claimed in the petition and pressed on brief on which evidence was offered is whether the Commissioner erred in determining the closing inventory of a sole proprietorship operated by petitioner to be $48,765.14 as recorded on its books or records or $36,423 as reported in petitioner's income tax return for 1946. Findings of Fact Petitioner is an individual. He filed his individual income tax return for 1946 with the collector of internal revenue for the first district of Illinois. Prior to April 30, 1946 petitioner operated a sole proprietorship under the name of Myers Products Co., engaged in the manufacture of ice cream dishers at Rockford, Illinois. On that date, petitioner transferred the business and assets of the proprietorship to an existing corporation known as Myers Products Corporation in exchange for 600 additional shares of its capital stock. The corporation had been inactive *247 since the end of January 1943. On April 30, 1946, the inventory of the proprietorship consisting of finished dishers, disher parts in process of manufacture, and raw material was taken at cost and entered on its books and those of the corporation at $48,765.14 as closing inventory of the proprietorship on that date and opening inventory of the corporation on May 1, 1946. Bad parts were listed on one of the inventory sheets and the costs of these sheets were not extended or included in the $48,765.14 figure. In its income and declared value excess profits tax return for its taxable year ended August 31, 1946, filed November 14, 1946, the opening inventory of the corporation was reported at $48,765.14. The return was prepared by a certified public accountant. In April 1947 the corporation made an entry on its books reflecting an alleged corrected opening inventory on May 1, 1946 of $36,423, the reduction of $12,342.14 being charged to capital surplus and credited to earned surplus. The revised inventory purported to have been taken at market value. The decrease in the inventory was based on a letter from the accountant dated March 15, 1947, and a computation made by him using a *248 value of 55 per cent of cost for items which had been included in the closing inventory of the proprietorship and the opening inventory of the corporation at a total cost of $25,204.75. These items consisted of necks and bowls, both finished and in the process of manufacture, for dishers; bowl stock; and stainless steel in the raw material stage. Petitioner had purchased the steel from Central Steel and Wire Company in April 1946 at a cost of $16,723.85. It met the specifications petitioner had made in his order to the seller. On April 30, 1946, none of the steel had been processed and it was still in the containers in which it had been received by petitioner. During approximately the six-month period following April 30, 1946, the corporation manufactured dishers from the steel, improving its methods as it continued the process. There were instances when bowls for the dishers cracked and dies were damaged in the process. When he bought the steel petitioner had had practically no experience in manufacturing dishers from that material, having previously made them from other materials. Beginning in October 1946 some dishers made from the steel were returned by customers of the corporation *249 as defective. The corporation made no record of the number of bowls cracked or dishers returned. In his income tax return for the taxable year, filed March 11, 1947, petitioner reported the closing inventory of the proprietorship on April 30, 1946, taken at the lower of cost or market, at $36,423. The return was prepared by the same certified public accountant who had prepared the corporate return and who had written the letter concerning inventory referred to above. The Commissioner determined that the inventory had been understated $12,342.14 and increased petitioner's reported net profit from the proprietorship by that amount. Opinion TIETJENS, Judge: Petitioner's contention is that his income should not be increased as determined by the Commissioner because after his original inventory was prepared it was discovered that such original inventory, which entered into the computation of his taxable income for 1946, contained defective material and accordingly that he was entitled to reduce the value of the inventory to accord with the facts. The Commissioner maintains that petitioner has failed to prove that the Commissioner's determination was in error, has failed to prove *250 that the market value of the alleged defective materials was less than cost and consequently, that the Commissioner's determination must stand. We agree. Much of the evidence of record was directed to the stainless steel which petitioner purchased for manufacture into ice cream dippers. Due to war time restrictions this was a new material for the manufacture of the articles with which petitioner had had little or no experience. The steel in question was purchased prior to April 30, 1946 at a price of $16,723.85 and as of that date (a crucial one here) had not even been put to use. The steel was not "defective" as petitioner maintains. The most that can be said of it was that it was not suitable for the manufacture of the dishers because its gauge was not uniform. And as a matter of fact petitioner's witnesses testified that they got just what they ordered and that the steel met specifications. We see no basis for allowing petitioner as a matter of hindsight to come in now and upset the Commissioner's determination that as of April 30, 1946 the steel was worth just what the steel cost. As for defective parts neither do we perceive any reason for permitting a downward revision of *251 inventory from the Commissioner's determination. As we see the evidence most of the defective parts resulted from the use of the claimed "defective" steel. This took place after the inventory had passed from petitioner to the hands of the corporation. Such parts could have no effect on the value of petitioner's inventory. They might have affected the corporation's closing inventory but the value of that inventory is not before us. As for defective parts on hand when the inventory was transferred to the corporation the evidence shows that such parts were separately listed and that their cost was not included in the $48,765.14 inventory figure determined by the Commissioner. After careful consideration of all of the evidence of record we conclude that petitioner has not demonstrated error in the Commissioner's determination. Decision will be entered for the respondent.